UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| ADMINTERMARE, A DIVISION OF, | * | 1:19-cv-_____ |
| ADM INTERNATIONAL, SARL | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | **ORIGINAL COMPLAINT** |
| | * | |
| GLENCORE LTD., | * | |
| Defendant | * | |
| | * | |

_____

Plaintiff, ADMIntermare, a division of ADM International, SARL ("ADMIntermare"), files this Original Complaint against Defendant, Glencore Ltd., and alleges upon information and belief as follows.

## JURISDICTION AND VENUE

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court has jurisdiction under 28 U.S.C. §1333.

2.      Venue is proper in this Court under 28 U.S.C. §1391(b) because the Defendant resides in this District.

## PARTIES

3.      Plaintiff, ADMIntermare, at all material times to this action was and is a foreign company duly organized and operating under foreign law with its principal place of business in Rolle, Switzerland.  ADMIntermare was the time charterer of the M/V SFL Yukon ("SFL Yukon" or "Vessel").

HOUIMAN\582316-1

4.      At all material times, upon information and belief, Defendant Glencore Ltd. ("Glencore") was and is a corporation organized under the laws of Switzerland with its principal office in the United States located at 330 Madison Avenue, New York, New York 10017.  Glencore is registered to do business in this state, systematically does business within this district, and has a principal office in this district.  Glencore may be served with process through its registered agent, Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

**FACTS**

5.      On or about June 14, 2018, and subsequently modified on or about June 20, 2018, Plaintiff as buyer entered into a contract with Kamca Trading S.A.("Kamca") as seller, in which Kamca agreed to supply the Vessel with 980 metric tons of RMG380 bunker fuel, along with 90 metric tons of MGO bunker fuel.  A copy of the bunker confirmation contract is attached to this Complaint as Exhibit 1.  The contract required Kamca to deliver fuel meeting the quality specifications of industry standards for marine fuel and the standards of ISO 8217-2010.  The bunker confirmation contract is a maritime contract.

6.      Upon information and belief, in order to fulfil its obligation to deliver the fuel, Kamca obtained the bunker fuel from Defendant Glencore.

7.      On or about June 22, 2018, Kamca delivered approximately 980 metric tons of RMG380 bunker fuel and approximately 90 tons of MGO bunker fuel to the Vessel at the Balboa Anchorage in Panama.  A Bunker Delivery Receipt was issued on June 22, 2018, memorializing the delivery of this fuel to the Vessel.  A copy of the Bunker Delivery Receipt is attached to this Complaint as Exhibit 2.  Upon information and belief, this fuel, delivered by Kamca to the Vessel,

HOUIMAN\582316-1

was contaminated, unsuitable, substandard, defective, unfit, non-conforming, not suitable for use on marine vessels, and off-specification (hereinafter "Contaminated Fuel").

8.      Upon information and belief, Glencore produced, manufactured, stored, blended, sold, and/or supplied the Contaminated Fuel.

9.      The Vessel owners have asserted claims against ADMIntermare for alleged damage to the Vessel's main engines and related damages caused by using the fuel supplied for the Vessel by Defendant.  Plaintiff chartered the Vessel from its disponent owner, Nordic Bulk Carriers A/S ("Nordic Bulk").   Pursuant to the charterparty between ADMIntermare and Nordic Bulk, ADMIntermare was required to provide and pay for all the fuel.  Nordic Bulk instituted arbitration proceedings in London, pursuant to the charterparty, on or about May 28, 2019, seeking damages in the amount of approximately $900,000 from ADMIntermare for allegedly providing the Contaminated Fuel to the Vessel.  Upon information and belief, head owners of the Vessel have initiated arbitration proceedings in London against Hyundai Co. Limited, and Hyundai is proceeding against Nordic Bulk, asserting the same claim for allegedly providing Contaminated Fuel that caused damage to the Vessel and head owners.

10.      Upon information and belief, after the Vessel began consuming the fuel supplied and sold into the stream of commerce by Defendant in Panama, the Vessel suffered a fuel pump seizure and main engine problems on or about July 12, 2018.  While using the Contaminated Fuel sold and supplied by Defendant, the Vessel continued suffering fuel pump seizures, main engine purifier problems, and eventually a complete blackout and engine failure during the time from July 12, 2018 through July 27, 2018, while the Vessel was at sea en route from Panama to its intended discharge ports of Ningbo and Nansha in China.  The Vessel diverted to Busan, Korea to perform

3

repairs of the Vessel's main and generator engines and fuel pumps.  Nordic Bulk and the Vessel head owners allege that all these fuel pump and main engine problems, repair costs, loss of charter hire, and associated damages were caused by fuel provided by ADMIntermare as charterer, which is the Contaminated Fuel provided by Defendant at Panama.

11.     On or about July 19, 2018, Plaintiff gave notice to Kamca of the Vessel's main engine issues and that the problems suffered by the Vessel appeared to be caused by off-specification fuel supplied by Kamca.  On or about July 20, 2018, Kamca was invited to attend joint fuel sample testing that Vessel Owners intended to conduct at a lab in Singapore.  On or about July 23, 2018, Kamca acknowledged receipt of notice of the claim, but declined to attend the lab testing in Singapore.  During subsequent weeks, Plaintiff gave additional notices of claim to Kamca and provided information to Kamca as received from the Vessel Owners.  Kamca has denied liability for damage caused by the Contaminated Fuel.

12.     Upon information and belief, Kamca purchased the fuel from Glencore.  Upon information and belief, Kamca put Glencore on notice of the claim for damages to the Vessel caused by the Contaminated Fuel.

13.     On or about August 10, 2018, Plaintiff redelivered the Vessel to Nordic Bulk, ending Plaintiff's charter of the Vessel.

14.     Plaintiff has submitted demand to Kamca with respect to the damages incurred by Kamca's failure to sell and supply bunker fuel meeting the proper and contracted specifications.  However, Kamca has not accepted responsibility to Plaintiff for its losses and has not accepted responsibility for Plaintiff's potential liability to Nordic Bulk.

4

HOUIMAN\582316-1

15.     Plaintiff was without fault in causing and/or contributing to the damages asserted in this Complaint.

16.     Nordic Bulk and the Vessel Owners have provided Plaintiff with reports of testing Vessel fuel samples that indicate the fuel supplied by Defendants was contaminated with high levels of non-hydrocarbon compounds, and that the fuel was off-specification, defective, unsuitable, not safe, unsatisfactory, and not of a quality fit for burning and use as marine fuel on board the Vessel.

17.     Plaintiff sent Kamca copies of the lab test reports indicating that the bunkers provided by Defendants were contaminated.  Plaintiff sought Kamca's assistance to facilitate Vessel owners debunkering the Contaminated Fuel.  Upon information and belief, the Vessel eventually debunkered the Contaminated Fuel at Singapore on or about January 2019.

18.     The contamination of the bunker fuel was legally caused by the defective product, acts, omissions, faults, or other conduct of Glencore. The source of all damages, costs, and expenses incurred, and which may be incurred, by Plaintiff is the Defendant's defective product and its provision of contaminated, unsuitable, substandard, defective, unfit, non-conforming, off-specification bunker fuel into the stream of commerce.

19.     Plaintiff has complied with all conditions precedent to the maintenance of all causes of action asserted in this Complaint.

HOUIMAN\582316-1

## FIRST CAUSE OF ACTION – PRODUCT LIABILITY

20.     Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

21.     Glencore is a manufacturer and seller of marine fuel, specifically the fuel that was provided to the Vessel that is the subject of this Complaint.

22.     The fuel that Glencore manufactured, sold, and provided to the Vessel was inherently defective, off-specification, contaminated, unsuitable, unsafe, and did not conform with applicable specifications and regulations.

23.     The fuel that Glencore manufactured, sold, and provided to the Vessel was defectively designed, defectively manufactured, and defectively marketed because the fuel was contaminated, off-specification, unsuitable, and unsafe for use as marine fuel.

24.     Defendant Glencore failed to warn Plaintiff or the Vessel of the contaminated, defective, and dangerous nature of the fuel that was manufactured, sold, and provided to the Vessel by Glencore, and its failure to warn constitutes an additional product defect.

25.     The Contaminated Fuel manufactured, sold, and provided to the Vessel by Defendant constitutes a defective product, and Defendant is liable to Plaintiff for selling, manufacturing, and providing a defective product causing harm.

26.     As a direct result of the product defects in the fuel manufactured, sold, and provided to the Vessel by Glencore, Nordic Bulk and the Vessel Owners allege claims in arbitration against Plaintiff that the Vessel suffered physical damage to its fuel pumps, fuel system, and to its engines

6

and engine components, and that Nordic Bulk and the Vessel Owners suffered additional direct

and consequential damages, for which they seek to hold Plaintiff liable.

27.      Plaintiff has incurred damages to investigate Nordic Bulk's claims, for fuel sample

testing and attendance of marine surveyors, and to defend the London arbitration brought by

Nordic Bulk, and these damages are caused by the defective product manufactured, sold, and

provided to the Vessel by Glencore.

28.      In the event that Plaintiff is held liable to Nordic Bulk or the Vessel Owners, this

liability and all damages suffered by Plaintiff are a direct result of the defective Contaminated Fuel

manufactured, sold, and provided to the Vessel by Glencore.

29.      The damages suffered, and which may be incurred, by Plaintiff were all foreseeable

to Glencore as the manufacturer, seller, and supplier of the defective fuel.

30.      Defendants' defective product is the cause of all damages suffered by Plaintiff, for

which Defendant is liable to Plaintiff in an amount that may be finally determined by this Court.

**SECOND CAUSE OF ACTION – MISREPRESENTATION**

31.      Plaintiff repeats and re-alleges each and every allegation set forth in the preceding

paragraphs as if fully set forth herein.

32.      The bunker confirmation confirming Plaintiff's order of the bunkers from Kamca

expressly represented and warranted that the quality of the bunkers would meet the standard and

specifications for RMG380 marine fuel set forth in ISO 8217-2010, and the contract required the

fuel to meet industry quality standards for RMG380 marine fuel.  Upon information and belief,

HOUIMAN\582316-1

Glencore represented that the fuel it put into the stream of commerce by supplying it to Kamca would meet these same industry standards

33.    Glencore further represented that the bunkers were compliant with the relevant regulations of Annex VI of MARPOL 73/78.

34.    Defendant's provision of Contaminated Fuel that did not meet the standards and quality specifications of ISO 8217-2010 and of industry standards for marine fuel constitutes a material misrepresentation by Glencore as to the quality, specifications, and/or fitness for purpose of the marine fuel, which was relied upon by Plaintiff to its detriment.  Defendant knew, or should have known, about the contaminated, defective, unsuitable, substandard, dangerous condition of the fuel.  Plaintiff is entitled to recover from Defendant its damages caused by the intentional and/or negligent and/or fraudulent misrepresentation of the quality and nature of the Contaminated Fuel.

35.    Glencore's misrepresentations of the quality and nature of the Contaminated Fuel constitute fraudulent and grossly negligent misrepresentations.  Defendant knew or should have known that the fuel it supplied was contaminated.  Defendant represented that the fuel met ISO 8217-2010 specifications for RMG380, but this material representation was false.  Upon information and belief, Defendant undertook no actions, tests, or investigations to determine whether the fuel was free of contaminants, free of non-hydrocarbon compounds or other contaminants that made the fuel harmful to engines.  This failure constitutes Defendant's reckless disregard for the truth of its material representations as to the specifications and quality of the fuel.  Plaintiff had a right to and did rely upon Defendant's material representations as to the fuel specifications and quality, and Plaintiff did not know its representations were false. As a proximate

HOUIMAN\582316-1

result of Defendant's fraudulent and grossly negligent material misrepresentations, Plaintiff suffered the damages for which it seeks recovery.

36.     If the Vessel and its Owners suffered physical damage to the Vessel, fuel pumps, fuel system, and to its engines and engine components, and if the Vessel and its Owners suffered loss of charter hire and other damages as alleged in their arbitration proceedings, then these damages were a direct, foreseeable result of Glencore's misrepresentations.

37.     If Plaintiff is liable to Nordic Bulk and the Vessel Owners for their alleged damages claimed in the arbitration, then Plaintiff's liability and damages are a direct, foreseeable result of Glencore's misrepresentations.

38.     Plaintiff has incurred damages to investigate Nordic Bulk's claims, for fuel sample testing and attendance of marine surveyors, and to defend the London arbitration brought by Nordic Bulk, and these damages are caused by Defendant's material misrepresentations.  In the event that Plaintiff is held liable to Nordic Bulk or the Vessel owners, Defendant's material misrepresentations are the cause of all damages suffered by Plaintiff, for which Defendant is liable to Plaintiff in an amount that may be finally determined by this Court.

**THIRD CAUSE OF ACTION – NEGLIGENCE and GROSS NEGLIGENCE**

39.     Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

40.     As a manufacturer, seller, and supplier of marine fuel, Glencore had a duty to provide marine fuel that was suitable and safe for use and not off-specification or contaminated.

41.     Glencore breached this duty by manufacturing, blending, and selling into the stream of commerce marine fuel that was off-specification, contaminated, unsuitable, unsafe, and which did not conform with applicable specifications and regulations.  Glencore's breach of duty constitutes negligence and gross negligence because, upon information and belief, Defendant undertook no actions, tests, or investigation to determine whether the fuel it supplied met ISO 8217-2010 quality specifications for RMG380 and to determine whether the fuel it supplied was free of contaminants harmful to marine engines.  Defendants' failure to undertake any such tests constitutes a reckless disregard for the safety of the Vessel, its engines, its cargo, and for the personal safety of the Vessel crewmembers.

42.     As a direct result of Defendant's breach of duty, Nordic Bulk and the Vessel owners allege that the Vessel suffered physical damage to its fuel pumps, fuel system, and to its engines and engine components, and that Nordic Bulk and the Vessel owners suffered loss of hire and other damages.

43.     If Plaintiff is held liable to Nordic Bulk and/or the Vessel owners, Plaintiff's liability and damages are a direct, forseeable result of Glencore's breaches of duty.

44.     Plaintiff has incurred damages to investigate Nordic Bulk's claims, for fuel sample testing and attendance of marine surveyors, and to defend the London arbitration brought by Nordic Bulk, and these damages are caused by Defendant's  negligence and breaches of duty.  In the event that Plaintiff is held liable to Nordic Bulk or the Vessel owners, Defendant's negligence, gross negligence, and breaches of duty are the cause of all damages suffered by Plaintiff, for which Defendant is liable to Plaintiff  in an amount that may be finally determined by this Court.

HOUIMAN\582316-1

## FOURTH CAUSE OF ACTION – INDEMNITY and CONTRIBUTION

45.     Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

46.     Nordic Bulk, as disponent owner of the Vessel, is currently pursuing pending arbitration proceedings in London against Plaintiff, seeking to recover from Plaintiff, under the charter party between Plaintiff and Nordic Bulk, at least approximately $900,000 in damages allegedly caused by the provision of Contaminated Fuel to the Vessel.  Upon information and belief, head owners of the Vessel are pursuing arbitration proceedings in London against Hyundai Co. Limited, and Hyundai is proceeding against Nordic Bulk, asserting the same claim for allegedly providing Contaminated Fuel that caused damage to the Vessel and head owners.

47.     The arbitration proceedings currently pending in London are current claims against Plaintiff, which arise out of the Contaminated Fuel provided to the Vessel by Defendants, that cause Plaintiff to suffer damages and expense to investigate and defend the arbitration proceedings. Defendant is liable to Plaintiff in indemnity or contribution for all these damages currently being suffered by Plaintiff.

48.     If it is decided in the arbitration proceedings that Plaintiff is liable to Nordic Bulk or Vessel owners for providing Contaminated Fuel to the Vessel, or for any other reason, Plaintiff is entitled to recover from Defendant, in contribution or indemnity, the full amount of any arbitration award rendered against Plaintiff, together with all losses, damages, expenses, attorneys' fees, costs, and interest associated with the arbitration award and Plaintiff's damages.

HOUIMAN\582316-1

49.     Plaintiff is entitled to indemnity from Defendant for these losses under contractual, equitable, legal, statutory, general maritime law, and/or common law principles for contribution and/or indemnity because Glencore's defective product, misrepresentations, and conduct, and legal faults for providing Contaminated Fuel to the Vessel are the cause of all these losses and damages.

50.     Plaintiff is entitled to recover damages for indemnity and/or contribution from Defendant in an amount to be determined by the Court.

## FIFTH CAUSE OF ACTION – EQUITABLE SUBROGATION

51.     Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

52.     Under principles of equitable subrogation, Plaintiff is entitled to recover from Defendant all damages sustained by Nordic Bulk and the vessel Owners caused by the Contaminated Fuel which may be determined in the London arbitration proceedings and which Plaintiff pays to Nordic Bulk or to Vessel owners pursuant to an arbitration award or by settlement.

53.     Defendant is primarily liable to Nordic Bulk and to Vessel owners for their damages caused by the Contaminated Fuel because the Defendant provided the defective Contaminated Fuel product to the Vessel, and because Defendant's defective product, misrepresentations, negligence, and gross negligence caused all their damages and all causes of action that Nordic Bulk and Vessel owners have against Defendant.

54.     If ADMIntermare pays the debt, damages, or amounts due to Nordic Bulk or Vessel owners for which Defendant is primarily liable, ADMIntemare stands in the shoes of Nordic Bulk

and Vessel owners and is entitled to recover from Defendant the entirety of damages suffered by ADMIntermare, Nordic Bulk, and Vessel owners pursuant to equitable subrogation.

55.     ADMIntermare is free from fault and did not cause any damage to the Vessel, to Nordic Bulk, or to Vessel owners.

56.     The defective product, faults, conduct, and breaches of legal duty by the Defendant are the cause of all damages suffered by the Vessel, Vessel owners, Nordic Bulk, and ADMIntermare.  Therefore, ADMIntermare is equitably subrogated to all rights and causes of action of the Vessel, Vessel owners, and Nordic Bulk arising out of the Defendant's provision of the Contaminated Fuel.

57.     Plaintiff is entitled by equitable subrogation to recover from Defendant all damages sustained by ADMIntermare, the Vessel, Vessel owners, and Nordic Bulk caused by the Contaminated Fuel, in an amount to be determined by the Court.

## PRAYER FOR RELIEF

58.     Therefore, Plaintiff ADMIntermare prays for judgment against Defendant Glencore as follows:

(a)     Enter judgment in favor of Plaintiff ADMIntermare against Defendant Glencore for damages as may be finally determined by this Court, together with pre-judgment interest, post-judgment interest, reasonable attorneys' fees, and costs; and

(b)     That the Court grant such other and further relief as may be just and proper in the circumstances.

13

HOUIMAN\582316-1

Dated:  October 16, 2019

Respectfully submitted,

**HOLMAN FENWICK WILLAN USA LLP**

/s/ Michael J. Wray
Michael J. Wray
Fed. ID. 2050
Email: Michael.wray@hfw.com
5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone: (713) 917-0888
Telefax: (713) 953-9470
**ATTORNEY-IN-CHARGE FOR PLAINTIFF, ADMINTERMARE, A DIVISION OF ADM INTERNATIONAL, SARL**

**OF COUNSEL**
Gerard J. Kimmitt
Christopher R. Hart
HOLMAN FENWICK WILLAN USA LLP
Email: chris.hart@hfw.com